IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tippy Marie Retana, #329193, | ) | C/A No. 5:15-00523-RBH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Marian Boulware, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Tippy Marie Retana ("Petitioner") is a state prisoner, and filed this pro se Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1 at 15.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation ("R&R") on Respondent's Return and Motion for Summary Judgment. ECF Nos. 14, 15. On April 27, 2015, pursuant to *Roseboro v. Garrison*,[2] the court advised Petitioner of the Summary Judgment procedures and instructed her to file a Response to Respondent's Summary Judgment Motion by June 1, 2015. ECF No. 16. On June 4, 25015, the court ordered Petitioner to file a Response to the Motion for Summary Judgment if she wished to pursue her case. ECF No. 19. On July 6, 2015, Petitioner's counsel filed a Response in Opposition to Respondent's Motion for Summary Judgment, ECF No. 23, and on July 16, 2015, Respondent filed a Reply, ECF No. 27. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 14, be granted.

---

[1] The undersigned notes there is now counsel of record and that on July 8, 2015, Attorney John S. Keffer made an appearance on Petitioner's behalf. ECF No. 24.
[2] 528 F.2d 309 (4th 1975).

I.    Background

Petitioner is currently incarcerated in the Graham Correctional Institution ("GCI") of South Carolina Department of Corrections ("SCDC"). ECF No. 23. In 2008, Petitioner was indicted at the March term of the Lee County Grand Jury for murder (2008-GS-31-0054) and possession of a firearm during the commission of a violent crime (2008-GS-31-0054). App. 606-09. [3] Attorney Richard Strobel, Esq., represented Petitioner in a jury trial that convened from January 24-26, 2009; Solicitor Paul Fata represented the State. App. 1. Petitioner was tried before the Honorable John Milling. *Id.* After the trial, the jury found Petitioner guilty of both charges, and Judge Milling sentenced Petitioner to life imprisonment without parole for the murder conviction and a concurrent five-years' imprisonment for the possession of a firearm conviction. App. 558; 608-09. Petitioner did not file a direct appeal of her conviction and sentence.

II.    Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on January 16, 2009 (2009-CP-31-0023). App. 559-565. Petitioner asserted the following allegations, recited verbatim, regarding her claims:

    a)  Ineffective counsel.
    b)  They only had surcumstantial evidence.

App. 560. Petitioner alleged the following facts supported her PCR grounds:

    a)  My lawyer did not present all my evidence to prove I wasn't there.
    b)  My lawyer did not use but one of my witnesses.

---

[3] Citations to "App." refer to the Appendix for Petitioner's trial transcript and her claim for collateral relief in the state courts of South Carolina. That Appendix is available at ECF Nos. 15-1 and 15-2 in this habeas matter. The undersigned notes that the indictment numbers for both the possession charge and the murder charge are the same on Petitioner's sentencing sheets. App. 608-09.

    c)  He didn't file an appeal on a life sentence. He left the courtroom before the judge even told me about my appeal.

App. 560. Assistant Attorney General Mary S. Williams filed a Return on behalf of the State.

App. 561-70. A PCR hearing convened on April 28, 2011, before the Honorable W. Jeffrey

Young. App. 571-95. Petitioner was present and represented by Marc Schnee, Esq., and Mary S.

Williams appeared on behalf of the State. *Id.* Petitioner, trial counsel Strobel, and Petitioner's

mother, Cynthia Tompkins, testified during the hearing. *See id.* In an Order dated December 14,

2011, the PCR court denied Petitioner's PCR Application in full, making the following findings

of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has
> heard the testimony at the post-conviction relief hearing. This Court has further
> had the opportunity to observe the witnesses presented at the hearing, closely pass
> upon their credibility and weigh their testimony accordingly. Set forth below are
> the relevant findings of facts and conclusions of law as required pursuant to S.C.
> Code Ann. §17-27-80.

> **Ineffective Assistance of Trial Counsel**

> The Applicant alleges she received ineffective assistance of counsel. In a PCR
> action, "[t]he burden of proof is on the applicant to prove his allegations by a
> preponderance of the evidence." Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d
> 172, 174 (2002) (citing Rule 71.1(e), SCRCP). Where ineffective assistance of
> counsel is alleged as a ground for relief, the Applicant must prove that "counsel's
> conduct so undermined the proper functioning of the adversarial process that the
> trial cannot be relied upon as having produced a just result." Strickland v.
> Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984);
> Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985).

> The proper measure of performance is whether the attorney provided
> representation within the range of competence required in criminal cases. Courts
> presume that counsel rendered adequate assistance and made all significant
> decisions in the exercise of reasonable professional judgment. Butler, Id. The
> Applicant must overcome this presumption to receive relief. Cherry v. State, 300
> S.C. 115, 386 S.E.2d 624 (1989).

> First, the Applicant must prove that counsel's performance was deficient. Under
> this prong, attorney performance is measured by its "reasonableness under
> professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625 (citing

Strickland, supra). Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." Johnson v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing Strickland).

*Ineffective Assistance of Counsel/Failure to Investigate*

Applicant asserts that Counsel was ineffective in his investigation. Applicant testified she was arrested December 27, 2007, and Counsel undertook representation within two (2) weeks of her arrest. Applicant testified that she and Counsel began discussing the facts of the case in May. Applicant felt that Counsel should have sought gunshot residue ("GSR") testing, testing of clothing, phone records, and surveillance from the Exxon gas station she had claimed to visit. In addition to her son, Applicant had also wanted her mother and sister to testify. Applicant also stated that Counsel had not discussed any experts with her. Applicant added that Counsel did not discuss with her testifying as part of a motion to suppress her statements.

Counsel affirmed that he was retained shortly after Applicant's arrest. Counsel testified that he met with Applicant on numerous occasions at the jail. Applicant had already given a statement confessing to the killing when Counsel began his representation. Counsel obtained photos of bruises as well as police reports. He began developing a battered wife defense. As the defense was developing, Counsel testified that in April Applicant changed her story, saying that she had not killed the victim and that she had been lying for the past three months. At that point, Counsel's battered wife theory was no longer viable. Counsel noted that he argued the lack of GSR testing as indicative that the police believed she was not involved. Counsel further argued that the police had failed to collect clothing. Counsel opined that even if he had sought clothing for testing, clothing was easily washed. Finally, counsel stated he did not believe that Applicant's testimony at a Jackson v. Denno hearing would change the outcome of the hearing.

Based on the testimony presented at the PCR hearing, I find Applicant has failed to satisfy her burden in proving that counsel's performance fell below reasonable professional norms in his investigation, preparation and representation in this case. Counsel took reasonable steps to prepare this case for trial including preparing a seemingly strong "battered wife" defense which was later taken off the table by Applicant's own actions. Counsel is a well seasoned criminal defense attorney that used his decades of experience to sufficiently prepare this case for trial after adequately and fully advising Applicant of the circumstances of the charges, the evidence against her, her rights and the consequences of proceeding to a jury trial. I further find that Applicant has failed to produce any credible evidence that would have changed the outcome of the case at trial. See Moorehead v. State, 329 S.C. 329, 496 S.E.2d 415 (1998) (no prejudice where

claim of failure to investigate is supported only be mere speculation as to the result).

*Failure to File an Appeal*

Applicant also alleges counsel was ineffective in failing to file an appeal on her behalf. According to the trial transcript, the trial court informed Applicant of her right to an appeal after sentencing. (Tr.p.475). Counsel states that he left the courtroom after sentencing, and the trial court provided this information in his absence. Applicant testified both she and her mother attempted to contact counsel to request an appeal be filed. Cynthia Tompkins ("Tompkins"), Applicant's mother, also testified at the PCR hearing that she contacted counsel's office to request an appeal on Applicant's behalf. Tompkins went on to state she tried to contact counsel twice a week to try to speak with him about a possible appeal, but never got the opportunity to speak with him about it. Counsel testified that he knew Tompkins for many years before his representation of Applicant, but that at no time did he have a discussion with Applicant or Tompkins regarding an appeal.

Following a trial, counsel is required to make certain the defendant is made fully aware of the right to appeal. Turner v. State, 380 S.C. 223, 224, 670 S.E.2d 373, 374 (2008); see also Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029 (2000). "Absent an intelligent waiver by the defendant, counsel must either initiate an appeal or comply with the procedure in Anders v. California. 'To waive a direct appeal, a defendant must make a knowing and intelligent decision not to pursue the appeal.'" [Internal citation omitted.] Clark v. State, Op. No. 4915 (S.C. St. App. filed December 7, 2011). Where the post-conviction relief judge determines that the applicant did not freely and voluntarily waive his or her appellate rights, the applicant may petition the South Carolina Supreme Court for review of direct appeal issues pursuant to White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974). See Rule 243 SCACR; Davis v. State, 288 S.C. 290, 342 S.E.2d 60 (1986).

Because I find no evidence that Counsel consulted with Applicant regarding an appeal, I affirmatively find that the Applicant did not knowingly and voluntarily waive her right to a direct appeal. The Court concludes that the Applicant is entitled to a belated review of her convictions. A petition for belated review pursuant to White v. State can remedy the Applicant's lack of a direct appeal.

**Other Allegations**

No other allegations were raised at the PCR hearing. Therefore, any additional allegations are deemed waived because no evidence was presented.

**CONCLUSION**

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations (with the exception of

the belated appeal request) that would require this court to grant her application. Therefore, this application for Post-Conviction relief must be denied and dismissed with prejudice.

IT IS THEREFORE ORDERED:

1. That this current Application for Post-Conviction Relief be dismissed with prejudice.

2. That the Applicant is granted a belated direct appeal pursuant to <u>White v. State</u>, 263 S.C. 110, 108 S.E.2d 35 (1974). Within thirty days of service of this Order, counsel for Applicant must file a Notice of Appeal to secure the appropriate review of the Applicants' convictions. Counsel and the Applicant are directed to <u>Davis v. State</u>, 288 S.C. 290, 342 S.E.2d 60 (1986) and South Carolina Court Rule 243 for the appropriate procedure for securing belated appellate review.

3. The Applicant be remanded to the custody of Respondent.

App. 597-602. PCR Counsel filed a Notice of Appeal on Petitioner's behalf, and Appellate Defender David Alexander filed a Petition for Certiorari. App. 603, ECF No. 15-3. Therein, Petitioner presented the following issues for review: "Whether petitioner should be granted a belated appeal pursuant to *White v. State*, 263 S.C. 110, 108 S.E.2d 35 (1974)?" ECF No. 15-3 at 3. In the *White v. State* Appellate Brief, Petitioner argued: "Whether the trial court erred in admitting letters written by the defendant and testimony regarding these letters because the State did not produce them in accordance with Rule 5 of the South Carolina Rules of Criminal Procedure?" ECF No. 15-4. Assistant Deputy Attorney General Karen C. Ratigan filed a *White v. State* Response Brief on behalf of the State. ECF No. 15-5. After the case was transferred, the South Carolina Court of Appeals found that "Petitioner did not knowingly and intelligently waive her right to a direct appeal [and] grant[ed] certiorari and proceed[ed] with a review of the direct appeal issues pursuant to *Davis v. State*, 288 S.C. 290, 342 S.E.2d 60 (1986)." ECF No. 15-7. In its direct appeal review, the South Carolina Court of Appeals found:

Petitioner appeals her convictions for murder and possession of a firearm during the commission of a violent crime, arguing the trial court erred in admitting letters she wrote to a witness because the State violated Rule 5, SCRCrimP, by not disclosing the letters during discovery. We find the State did not have possession of the letters until after Petitioner's trial was underway, and it turned them over to Petitioner immediately upon receiving them from the witness. Accordingly, we find the State did not violate Rule 5, SCRCrimP, and the trial court properly admitted the letters. *See State v. McEachern*, 399 S.C. 125, 136, 731 S.E.2d 604, 609 (Ct. App. 2012) ("The admission or exclusion of evidence falls within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion."); *State v. Gulledge*, 326 S.C. 220, 226, 487 S.E.2d 590, 593 (1997) ("[I]f the prosecution does not have the material or evidence sought by the defense actually in its possession, disclosure is not required.").

*Id.* at 2. On August 22, 2014, the appellate court issued the Remittitur. ECF Nos. 15-8. This federal habeas Petition followed and was filed on February 4, 2015. ECF No. 1.

III.     Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in her federal Petition for a Writ of Habeas Corpus, quoted verbatim:

GROUND ONE: Ineffective counsel.
Supporting Facts: When I got arrested and hired Richard Strobel as my attorney, I told him of the abuse that I had endured in my relationship with Keneth Wilson. I told him what had happened the night Keneth was killed. He said we would go with Battered Women's Syndrome. Then about a week or maybe a week and a half later, he came to me and said I needed to plea. That Paul Fata was offering 30 years. I told Richard that I would plea 15 yrs to 20 yrs. A few days later he asked me if I wanted to go to jury trial. I asked why. He said he didn't believe that things had went down like I said the night Keneth was killed. I got scared and paniced. So I lied to him and told him someone else did it. I was not properly evaluated mentally. My left shoulder was x-rayed. I still have problems with it after 7 yrs. I was also on nerve pills when I testified.
Judge Milling said that I could be convicted of murder or manslaughter. And Richard continued to try to get me to plea for 30 yrs. I told him I would plea to manslaughter 15 yrs to 20 yrs. He didn't do the plea. Richard also didn't file my direct appeal on my life sentence. This was my first time in any kind of trouble with the law. I was ignorant to the laws. Richard Strobel left me standing alone in the courtroom once I was sentenced. He told my Aunt, Jean Weaver, that I would only leave prison if I were in a pine box. He did not even try to get me to sit in county for any extended time. I was only in county for 6 months on a murder charge. Richard said he didn't

file my direct appeal because he didn't think I wanted him to. ECF No. 1 at 5; 1-1 at 1-2.

GROUND TWO: Mitigating Circumstances.
Supporting Facts. Physical Abuse; mental abuse; verbal abuse; was being stalked; had restraint order. ECF No. 1 at 7.

GROUND THREE: Failure to bring all evidence.
Supporting Facts:  Witnesses of threats from victim; Warrants; Restraint orders; Sherrifs Reports from 2 different counties; Failure to bring Forth evidence for 16-25-90 law; Witness of actual physical abuse from victim; Doctor reports. *Id.* at 8.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

*Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### C.  Habeas Corpus Standard of Review

#### 1.    Generally

Because Petitioner filed her Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of her claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

#### a.   Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners.

*See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts

that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.  Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

      2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not

14

be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider

16

actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

IV.    Analysis

A. Procedurally Barred Grounds

As an initial matter, Respondent maintains that "the only claim raised to and ruled upon by the South Carolina Court of Appeals was trial counsel's failing to pursue a direct appeal on Petitioner's behalf." ECF No. 15 at 11. In Response,

> [Petitioner] concede[s] that the issue of failure to appeal has been previously heard and that Petitioner was in fact granted a belated appeal during PCR. Also, defense counsel's failure to secure a plea was not discussed at any other time during in the proceedings of this case and therefore will not be argued here. Petitioner's claim that counsel failed to present the defense of battered woman's syndrome has not been pursued at any time prior to Petitioner's writ habeas relief and therefore will also not be discussed in the present matter.

ECF No. 23 at 8. Petitioner then proceeds to argue that the South Carolina Court of Appeals "erred in affirming her conviction and in finding that the State did not violate Rule 5 of the South Carolina Rules of Criminal Procedure, by not disclosing the letters during discovery." *Id.*

Because Petitioner only raised the failure to file a direct appeal ground in her *White* PCR appeal,[4] she is procedurally barred from raising any other Ground in her habeas Petition. *See, e.g.* *Pickard v. Connor*, 404 U.S. 270, 276 (1976) ("We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts."); *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) ("[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his

---

[4] After the PCR court determined Petitioner did not freely and voluntarily waive her right to appeal, Petitioner filed an appeal pursuant to *White v. State*, 108 S.E.2d 35 (S.C. 1974).

claims to the highest state court."); *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487, at *13 (D.S.C. Sept. 23, 2009) (finding that because petitioner "did not properly present this claim to the state's highest court in a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred from review in federal habeas corpus"). Therefore, the undersigned finds and Petitioner conceded that all Grounds except Petitioner's direct appeal issue, are procedurally barred from habeas review because they were not raised to and ruled upon in the state court. Accordingly, the undersigned recommends granting Respondent Summary Judgment and dismissing Grounds Two, Three, and all subparts of Ground One that concern matters other than Petitioner's direct appeal issue because these issues were procedurally defaulted.

### B.  Miscarriage of Justice Exception

Petitioner may overcome procedural defaults and have her claims addressed on the merits by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602-03 (4th Cir. 1996). In order to demonstrate a miscarriage of justice, Petitioner must show she is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner cannot establish that the errors she complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* (internal citation omitted). The court's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the default. Thus, her claims are procedurally barred from consideration by this court and

should be dismissed. The undersigned therefore recommends that Respondent's Motion for Summary Judgment be granted as to Grounds Two, Three, and all subparts of Ground One that concern matters other than Petitioner's direct appeal issue.[5]

C. Merits

In Ground One Petitioner alleges trial counsel was ineffective in failing to file a direct appeal on her behalf. ECF No. 1 at 5; 1-1 at 2. Respondent argues that the state courts have already ruled on this issue in full, and this Ground One claim has been remedied. ECF No. 15 at 16. Furthermore, Respondent argues that "where Petitioner has nonetheless been afforded meaningful appellate review, habeas relief is not warranted." *Id.* Additionally, Respondent argues that Petitioner must demonstrate error and prejudice, and in this instance "prejudice cannot be shown; the state court equitably acted to ensure that Petitioner received the benefit of appellate counsel and review." *Id.* at 17.

In her Response to the Motion for Summary Judgment, Petitioner argues that "the Court of Appeals erred in affirming [Petitioner's] conviction and in finding that the State did not violate Rule 5 of the South Carolina Rules of Criminal Procedure, by not disclosing the letters during discovery." ECF No. 23 at 8. Additionally, Petitioner maintains that "[t]he letters written to Mr. Suits that were introduced at trial were improperly submitted into evidence and that even if they were submitted properly; counsel was ineffective in failing to request a continuance in order to develop a defense or strategy in regards to the letters." *Id.*

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S.

---

[5] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Grounds Two, Three, and certain portions of Ground One.

759, 771 (1970).   In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. 466 U.S. at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

On the outset, the undersigned questions whether this court can review the South Carolina Court of Appeals' decision on Petitioner's direct appeal issue because this issue was not raised in Petitioner's habeas Petition. Rather, the issue that was presented in Petitioner's habeas Petition was that trial counsel was ineffective in failing to file a direct appeal on her behalf. ECF No. 1 at 5; 1-1. Moreover, the state courts have already granted Petitioner relief available to her on this ground. Therefore, the issue of ineffective assistance of trial counsel for failing to file a direct appeal is moot because Petitioner presented her direct appeal issue pursuant to *White v. State*, 108 S.E.2d 35 (S.C. 1974). *See e.g.*, *Harris v. Warden, Broad River Corr. Inst.*, No. 2:13-CV-02755-JMC, 2014 WL 4955266, at *11 (D.S.C. Sept. 30, 2014) ("This ground is moot as the relief he seeks here was granted in state court when he received a belated direct appeal in the South Carolina Supreme Court. No habeas relief should issue."); *Furtick v. Warden of Lee Corr. Inst.*, No. 8:13-79-MGL, 2014 WL 1094615, at *17 (D.S.C. Mar. 19, 2014) *appeal dismissed*, 583 F. App'x 78 (4th Cir. 2014) ("[T]he state courts have already granted Petitioner the relief available to him on this ground and summary judgment should be granted with respect to this issue [by granting *White* appeal]."); *Earley v. Warden*, No. CIVA 4:08-CV-3961GRA, 2009 WL

4806997, at *15 (D.S.C. Dec. 8, 2009) ("This issue is moot in that the South Carolina Supreme Court allowed petitioner to file a belated appeal. Therefore, it is recommended that this issue be dismissed as moot.").

In her Response Brief, Petitioner argues that the South Carolina "Court of Appeals erred in affirming that the letters written by the Defendant were properly admitted because the State did not produce them in accordance with Rule 5 of the South Carolina Rules of Criminal Procedure." ECF No. 23 at 9. Again, this was not the issue Petitioner presented in her habeas Petition, therefore, it is arguably not properly before the court. However, to the extent this issue is properly before the court, the undersigned finds that the admission of evidence is a matter of state law that does not warrant habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions . . . a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Evidentiary rulings are generally considered state law matters. *Spencer v. Murray,* 5 F.3d 758, 763 (4th Cir. 1993) ("[C]laim[s] about the admissibility of evidence under state law rarely is a claim upon which federal habeas corpus relief can be granted."). "In federal habeas actions, we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000). Therefore, the court must decide whether the admission of the evidence itself so infected the entire trial that the resulting conviction violated due process. *Estelle,* 502 U.S. at 72. The undersigned can find no such violation in the record of this case.

Petitioner argues it was improper for the trial court to admit letters into evidence when the State failed to comply with Rule 5 of the South Carolina Rules of Criminal Procedure. ECF

No. 23 at 9. Furthermore, Petitioner maintains that the "letters were given improper weight and were severely prejudicial to the Petitioner." *Id.* The South Carolina Court of Appeals found the State did not violate Rule 5 because it "did not have possession of the letters until after Petitioner's trial was underway, and it turned them over to Petitioner immediately upon receiving them from the witness." ECF No. 15-7. Because there was no Rule 5 violation, the appellate court concluded that the "trial court properly admitted the letters" and cited to South Carolina case law in support of its holding. *See* Op., ECF No. 15-7 (citing *State v. McEachern*, 731 S.E.2d 604, 609 ("The admission or exclusion of evidence falls within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion."); *State v. Gulledge*, 487 S.E.2d 590, 593 (1997) ("[I]f the prosecution does not have the material or evidence sought by the defense actually in its possession, disclosure is not required.")). The undersigned agrees that no Rule 5 error occurred and consequently, the undersigned cannot find that "there is reasonable probability the *wrongly admitted evidence* influenced the jury's verdict." *State v. Green*, 724 S.E.2d 664, 673 (2012) (emphasis added).

The undersigned finds that the state court decision on the admission of letters into evidence was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or result[ed] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1),(2). Therefore, the issue raised in Ground One is without merit and should be dismissed.

In her Response Brief, Petitioner also argues that trial counsel was ineffective in failing to request a continuance when the State sought to introduce the letters into evidence. ECF No. 23 at 10-11. Petitioner represented that though the letters were admitted into evidence over trial

counsel's objections, trial counsel failed to request a recess or a continuance in order to properly review the letters and prepare a defense against them. *Id.* at 12. The undersigned previously found that the only issue properly before the court on habeas review was Petitioner's direct appeal issue. This issue does not include a separate ineffective-assistance-of-counsel claim for trial counsel's failure to request a continuance and prepare a defense. The undersigned finds that this issue is barred from review because Petitioner only raised the failure to file a direct appeal ground in her *White* PCR appeal. *See, e.g. Pickard v. Connor*, 404 U.S. 270, 276 (1976); *Baker v. Corcoran*, 220 F.3d at 288; *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487, at *13. Therefore, the undersigned finds the second issue argued in Petitioner's Response Brief is procedurally barred from habeas review because it was not raised to and ruled upon in the state court. Accordingly, the undersigned recommends granting Respondent summary judgment and dismissing Petitioner's ineffective-assistance-of-counsel claim for trial counsel's failure to request a continuance and prepare a defense because it was procedurally defaulted.

## V.     Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 14, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

January 7, 2016                                                     Kaymani D. West
Florence, South Carolina                                   United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

23